**Brandon J. DUNKELBERGER,**
**Petitioner**

v.

**UNEMPLOYMENT COMPENSATION**
**BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 9, 2011.

Decided Feb. 7, 2012.

Antonio D. Michetti, Trevorton, for petitioner.

Carol J. Mowery, Assistant Counsel, Harrisburg, for respondent.

Michael M. Apfelbaum, Sunbury, for intervenor Window World of the Greater Susquehanna Valley.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge and McCULLOUGH, Judge.

OPINION BY President Judge LEADBETTER.[1]

Brandon J. Dunkelberger (Claimant) petitions for review of the order of the Unemployment Compensation Board of Review (Board) reversing the Referee's determination, thereby denying Claimant unemployment compensation benefits pursuant to Section 402(h) of the Unemployment Compensation Law (Law),[2] which declares self-employed individuals ineligible for unemployment compensation. The issue before this Court is whether the Board erred by finding that Claimant was ineligible for benefits as an unemployed businessman under *Starinieri v. Unemployment Compensation Board of Review*, 447 Pa. 256, 289 A.2d 726 (1972). For the reasons that follow, we affirm the order of the Board.

From April of 2006 until August 18, 2010, Claimant was employed by Window World of Greater Susquehanna Valley, Inc. (Window World), as vice-president of the corporation. As a founder of the corporation, Claimant was a one-third owner of Window World, and served as one of the corporation's directors. In May of 2009, corporate director and president Curtis Reid, also a one-third owner of Window World, purchased the remaining one-third interest, thereby becoming the majority shareholder of the corporation holding two-thirds of Window World's stock. At that point, Claimant and Reid were Window World's only directors. On August 18, 2010, however, Reid elected his wife to Window World's board of directors. Reid and his wife then used their majority vote to immediately terminate Claimant's employment as vice-president.

Claimant subsequently applied for unemployment compensation benefits. The Scranton UC Service Center determined Claimant to be ineligible pursuant to *Starinieri*. Thereafter, an unemployment compensation Referee reversed that determination, noting that *Starinieri* requires maintenance of a substantial degree of control over the activities and direction of the employing company. The Referee concluded:

> When the claimant was removed involuntarily by a two thirds vote of the new corporation, the claimant was then removed from having any ability to have direction over the day to day operations of the corporation and, in fact, he was locked out of that company effective that date. Therefore, the claimant cannot be found ineligible for benefits under Section 402(h).

Referee's Decision/Order at 2. Window World then appealed the Referee's determination.

On appeal, the Board reversed the Referee's determination and denied Claimant benefits. The Board reasoned:

> In supplying information to the Department, the claimant indicated that until

1. This case was assigned to the opinion writer on or before January 6, 2012, when the opinion writer completed her term as President Judge.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h).

his discharge, he had the right to hire and fire employees; was responsible for making policy decisions; had financial responsibility such as signing checks, purchasing capital, bidding on contracts and negotiating loans or leases; had an active involvement in problem solving; oversaw daily operations of the business; and that he had a substantial degree of control, or the right to exercise control, over the daily operations of the corporation.

. . . .

The Pennsylvania Supreme Court has held that persons who exercise a substantial degree of control over a corporation and who become unemployed business people are ineligible for benefits. [*Starinieri* ] . . . .

There is no dispute that the claimant was discharged from [Window World]'s employ. However, the claimant's ultimate loss of control over the business is irrelevant where he admittedly exercised a substantial degree of control over the daily operations of the business up until the time of his discharge. As such, the claimant must be considered an unemployed business man (sic) and not entitled to benefits.

Board's Decision and Order at 2–3.

Claimant now appeals to this Court. Because the facts here are undisputed, the issue of whether the Board erred by finding Claimant ineligible for benefits due to self-employment as an unemployed businessman is a question of law, subject to our plenary review. *Friedman v. Unemployment Comp. Bd. of Review,* 99 Pa. Cmwlth. 369, 513 A.2d 560 (1986).

Initially, it is noted that at its most fundamental level, the Law is purposed by the General Assembly of this Commonwealth "for the benefit of persons unemployed through no fault of their own." Section 3 of the Law.[3] The Law was not intended, however, to supplement the income of individuals who become unemployed businessmen. *Starinieri.* Therefore, the General Assembly determined, as a matter of policy, to declare self-employed individuals ineligible for unemployment compensation. *See* Section 402(h) of the Law. Thus, the Law effectively embraces the notion that a self-employed individual is responsible for his own employment, and leaves him to shoulder his own burden for any loss thereof.

In *Starinieri,* a minority owner in a failed business enterprise sought unemployment benefits. There, the claimant was an officer and director and owned 38% of the stock of the corporation. He lost his job as an officer "upon the cessation of business by that corporation due to *voluntary* bankruptcy proceedings." *Starinieri,* 447 Pa. at 257, 289 A.2d at 726 (emphasis added). The Board had held that majority ownership of the stock was not a prerequisite to one's being considered a self-employed businessman, and the Court agreed, expressing the view that: "[T]he proper test is whether the employee exercises a substantial degree of control over the corporation; if so, he is a businessman and not an employee." *Id.* at 260, 289 A.2d at 728 (internal quotation marks omitted).[4]

Notably, in 1983, the General Assembly enacted Section 402.4 of the Law,[5] also

---

**3.** 43 P.S. § 752.

**4.** Justice Pomeroy dissented, accepting the appellant's argument that only a majority shareholder should be ineligible for benefits, because those were the only employees on whose wages the employer was not subject to

tax under Section 301 of the Act, 43 P.S. § 781.

**5.** Added by Section 19 of the Act of July 21, 1983, P.L. 68, 43 P.S. § 802.4.

addressing the circumstance in which a minority owner in a failed business enterprise seeks unemployment benefits. Specifically, Section 402.4 applies where a claimant loses his job as an officer of his own corporation upon the cessation of business by that corporation due to *involuntary* bankruptcy proceedings. In relevant part, Section 402.4, pertaining to "[e]ligibility of officers of a corporation deemed to be self-employed persons," states as follows:

> Notwithstanding any other provision of this act, an officer of a corporation deemed to be a self-employed person because he exercised a substantial degree of control over the corporation and who *becomes unemployed* due to the fact that the corporation enters into *involuntary* bankruptcy proceedings ... shall be entitled to receive unemployment compensation under this act....

(Emphasis added). Thus, any such business person holding a substantial degree of control over the corporation who loses his job when that business fails due to *involuntary* bankruptcy "becomes unemployed" and is eligible to collect unemployment benefits pursuant to Section 402.4. Obviously, the General Assembly intended that, no matter how much control a claimant exercised over the corporate employer, the claimant would still be eligible for benefits where the loss of employment was caused by an event outside his control, *i.e.*, the involuntary liquidation of the company.

Outside the context of Section 402.4, however, the courts, following *Starinieri,* have looked to a claimant's degree of control over corporate affairs prior to the termination of employment, rather than his ability to control the loss of that employment.

In *Rolland v. Unemployment Compensation Board of Review,* 53 Pa.Cmwlth. 562, 418 A.2d 807 (1980), the claimant, a board member and president of General Dealers Services, Inc., was held to be a self-employed businessman where he held a 1% ownership interest and exercised a substantial degree of policymaking control over the corporation. There, "the claimant sold his stock and resigned from his position as president and member of the board of directors," when requested to do so by the board chairman, who retained ultimate control over corporate affairs. *Rolland,* 418 A.2d at 808.

In *Geever v. Unemployment Compensation Board of Review,* 65 Pa.Cmwlth. 491, 442 A.2d 1227 (1982), the claimant, Teresa Geever, served as vice-president and corporate director; she, along with her husband, owned a 30% share of the company while two other individuals each held a 35% interest. Geever later became president, and then returned to her role as vice-president. During her time as president, she exercised what this Court deemed to be substantial control over the operations of the corporation. Later, however, the corporation began to operate without Geever's consultation or agreement; and eventually, without explanation, "[s]he was just 'voted out' by the other two shareholders." *Id.* at 1229. Concluding that Geever was eligible for unemployment benefits, this Court rendered the following analysis:

> Our cases in this area of the law indicate that in each instance each case will be determined upon its own facts. Thus, the percentage of stock owned is not in and of itself determinative of the issue ... the fact that Claimant is an officer of the corporation is not in and of [itself] determinative of the issue ... and, the Claimant's title is not determinative in and of itself.... It is only when consideration is given to all of those factors *as well as any others which might be indicia of control,* that a determination of

whether the Claimant is self-employed can be made.

As we have noted previously, when Claimant was president of the corporation, managed the restaurant and made decisions on her own during the period from August of 1977 until September of 1979, she was exercising substantial control of the business. At the time of her termination, however, such was not the case. Although still a member of the board and a shareholder and although nominally the manager of the restaurant business, it is clear from the record that the Claimant no longer exercised substantial control or any control but rather took orders from the other shareholders, the last of which *involuntarily* terminated her.

. . . . Our conclusion, therefore, that the Claimant is not a self-employed businesswoman but is an employee entitled to unemployment compensation benefits, is based upon our own analysis of the facts as found by the Board and our determination from those facts that *at the time of termination,* Claimant did not exercise substantial control of the corporation's affairs. . . . Whether or not Claimant may have had substantial control at some other point in time is, in the absence of evidence of collusion between the employer and the Claimant, irrelevant.

*Id.* at 1229–30 (citations omitted) (emphasis added).

Similarly, in *Ebert v. Unemployment Compensation Board of Review,* 58 Pa. Cmwlth. 429, 427 A.2d 1271 (1981), this Court concluded that a president and 30% stockholder who was discharged from his employment was not self-employed for purposes of the *Starinieri* doctrine, as he did not exercise any control over corporate affairs, but merely ran the company's computer.

Finally, in *Friedman,* this Court made clear the distinction between managerial and policymaking control. *Friedman* was a 20% shareholder and vice-president of Wallcoverings, Ltd. and general manager of its retail store. The Court noted:

His duties included ordering inventory and materials, supervising other employees and hiring and firing employees. He could not set employee salaries, but merely made recommendations to the president. He was not authorized to sign checks on behalf of the corporation. Any decisions he made were subject to the veto power of the president.

The court then concluded:

Friedman's role in the corporation was merely managerial. There is no evidence that he exercised judgmental policy powers which would indicate that he had a controlling role in Wallcoverings for purposes of the *Starinieri* doctrine.

513 A.2d at 561–62. In contrast, the Board's findings here, based on information supplied by Claimant, show that until his termination, Claimant exercised substantial policymaking control over Window World. Accordingly, Claimant falls squarely within the definition these cases have set out of a "businessman and not an employee."

Admittedly, in enacting Section 402.4, the General Assembly set a standard for a limited class of business persons under which their eligibility for benefits is determined, not by their status, but by their ability to control their loss of employment. Further, it is undeniable that this paradigm is consistent with the overall purpose of the law to provide for persons who involuntarily lose their jobs through no fault of their own and that *Starinieri* and its progeny stand in contrast to this paradigm. Under *Starinieri*, business persons like Claimant who, by virtue of their *mi-*

*nority* shareholder status, are unable to prevent their termination of employment, even where they are devoid of fault, are still ineligible for benefits. Moreover, their loss of employment in most of these cases is not due to a failed business venture, but simply to an ouster by those who have majority control of the corporation. Nonetheless, the *Starinieri* doctrine has been the law for several decades and neither our Supreme Court nor the legislature has seen fit to change it. We are bound to follow these precedents.

Accordingly, the Board's order is affirmed.

### *ORDER*

AND NOW, this 7th day of February, 2012, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.